UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYPHRENO ROBERTSON,<br><br>Plaintiff,<br><br>v.<br><br>PARAGON SYSTEMS, INC., et al.,<br><br>Defendants. | Case No. 25-cv-01012-NW<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: ECF No. 17 |

On December 27, 2024, Plaintiff Cyphreno Robertson filed his complaint, on behalf of himself and a putative class, in Santa Clara County Superior Court against Defendants Paragon Systems, Inc. ("Paragon") (doing business in California as Securitas Critical Infrastructure Services, Inc., and Parasys, Inc.), as well as ten Doe Defendants (collectively, "Defendants"). Defendants answered the complaint and removed the case to federal court.  Notice of Removal, ECF No. 1; Decl. of Frank Magnanimo i.s.o. Notice of Removal., ¶ 2, Ex. 1 ("Compl."); *Id*., ¶ 3, Ex. 2 ("Answer").

On May 16, 2025, Plaintiff filed a motion to remand.  Mot. to Remand, ECF No. 17 ("Mot."). Defendants opposed and Plaintiff filed a reply.  Opp'n, ECF No. 19; Reply, ECF No. 21.  The Court considered the parties' briefs and the relevant legal authority and concluded oral argument was not required, *see* N.D. Cal. Civ. L.R. 7-1(b).  ECF No. 24.  The Court GRANTS Plaintiff's motion to remand.

**I.     BACKGROUND**

Robertson is a resident of Rancho Cardova, California.  *Id*. He was employed by Defendants "in Napa County, California as an hourly-paid, non-exempt employee from

approximately April 2022 to approximately April 2023." Compl. ¶ 7.[1]

Paragon was formed under the laws of Alabama, and is headquartered in Herndon, Virginia. Notice of Removal ¶ 15. "Paragon is a national company which provides private security services, cybersecurity, and general protective services to a wide range of Federal Government agencies in defense, intelligence, homeland security, and civil sectors." Decl. of Laura Hagan i.s.o. Opp'n, ¶ 3, ECF No. 19-1 ("Hagan Opp'n Decl.").

On December 27, 2024, Robertson filed this wage and hour class action on behalf of a putative class of "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." Compl. ¶ 24. The complaint asserts eight causes of action: (1) failure to pay minimum and straight time wages, (2) failure to pay overtime wages, (3) failure to provide meal periods, (4) failure to authorize and permit rest periods, (5) failure to timely pay final wages at termination, (6) failure to provide accurate itemized wage statements, (7) failure to indemnify employees for expenditures, and (8) unfair business practices pursuant to Business and Professions Code §§ 17200, *et seq*. *See generally* Compl. Plaintiff brings each cause of action on behalf of himself and the putative class. *Id.* at 22.

On January 31, 2025, Paragon removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1441(a) and (b), asserting that the minimum diversity exists, the number of proposed class members is more than 100, and the amount in controversy exceeds $5,000,000. Notice of Removal ¶ 9. In support of removal to federal court, Paragon submitted a declaration from the Vice President of Labor Relations and General Counsel, Laura Hagan. Decl. of Laura Hagan, ECF No. 1-4 ("Hagan Removal Decl."). The declaration contains information about Paragon's non-exempt hourly employees. Robertson now moves to remand this case to state court for lack of subject matter jurisdiction. *See generally*

---

[1] Plaintiff states in other portions of the complaint that he worked for Defendants in Sacramento County, California. *See* Compl. ¶ 13.

Mot.

## II.     LEGAL STANDARD

A defendant may remove a case from state court to federal court only if the federal court would have originally had subject matter jurisdiction. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

CAFA gives federal courts jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). The removing party bears the burden of establishing that CAFA's jurisdictional requirements have been met. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683–685 (9th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021–22 (9th Cir. 2007). The removing party must file a notice of removal containing a short and plain statement of the grounds for removal, 28 U.S.C. § 1446(a), which must include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1216 (N.D. Cal. 2019) (quoting *Ibarra*, 775 F.3d at 1197).

In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. If the complaint does not state the amount in controversy, the defendant's notice of removal may do so. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). If the amount in controversy alleged by the defendant is contested by the plaintiff or questioned by the court, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 82, 88. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377

3

(9th Cir. 1997)). Defendants are permitted to make reasonable assumptions when calculating the amount in controversy. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). But "[m]ere speculation and conjecture" are insufficient to establish removal jurisdiction. *Ibarra*, 775 F.3d at 1197; *see also id.* at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them."); *Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-CV-05884-SJO-E, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) ("Courts have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence."); *Contreras v. J.R. Simplot Co.*, No. 2:17–CV–00585–KJM–EFB, 2017 WL 4457228, at *2 (E.D. Cal. Oct. 6, 2017) ("When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable, and not constitute mere speculation and conjecture."). Assumptions can, however, "be 'founded on the allegations of the complaint' and do not necessarily need to be supported by evidence." *Perez v. Rose Hills Co.,* 131 F.4th 804, 808 (9th Cir. 2025) (citation omitted).

### III.  DISCUSSION

To determine if removal is proper, the Court assesses whether this case meets each of CAFA's three threshold requirements. There is no dispute that the first two requirements are satisfied. There is diversity of citizenship as Robertson is domiciled in California, and Paragon is formed under the laws of Alabama and is headquartered in Herndon, Virginia. Hagan Removal Decl. ¶¶ 4-5. As to class size, Paragon contends that it "currently employs approximately 1,031 individuals on an hourly basis in California" and explains that, additionally, "there are approximately 625 hourly, nonexempt California employees who separated from employment from 2022 through March 23, 2025."[2] Hagan Removal Decl. ¶ 6, Hagan Opp'n Decl. ¶ 7. Robertson does not contest that the class size exceeds 100 members. *See generally* Mot.

There is a dispute about the third factor — whether the amount in controversy exceeds

---

[2] In their various calculations of the amount in controversy, Defendants utilize the number of current employees or the number of former employees, or the sum of both, depending on the nature of Plaintiff's claim.

4

$5,000,000. Plaintiff's complaint does not specify an amount in controversy. In their notice of removal, Defendants estimate that Plaintiff's meal period claim alone amounts to $38,798,592. Notice ¶ 32. In their opposition, Defendants provide additional estimates for Plaintiff's other claims: $6,888,960 for overtime; $4,288,960 for rest break violations; $6,000,000 for waiting time penalties; and $6,624,000 for the wage statement violations. *See generally* Opp'n. "To the extent the Defendants opposition contains new facts or calculations, the Court treats them 'as an amendment to [their] notice of removal.'" *Bonezzi v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 24-CV-06916-JST, 2025 WL 2048530, at *2 (N.D. Cal. July 22, 2025) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002)). Collectively, Defendants' estimates amount to $62,600,512, plus an additional 25% for attorney's fees.

Defendants' calculations are based on unreasonable and unsupported assumptions, including violation rates. For example, in calculating the amount in controversy for the meal period claim, Defendants assume a 100% violation rate – a violation for every employee, twice a week, every week during the class period. Notice of Removal ¶ 15. Defendants assert that this calculation "results in an amount in controversy just on his meal period claim alone of $38,798,592 ($14.00 [one hour of pay] x 2 days per workweek x 192 workweeks x 1,031 employees)," which — irrespective of the accuracy of the underlying assumptions — is mathematically incorrect.[3] *Id*. Although Defendants made reasonable estimates in terms of the hourly pay (by utilizing $14.00 per hour as opposed to the "$40.00 average hourly rate" of Paragon employees), Defendants ignored Plaintiff's allegation that the violations occurred "at times" and instead calculated more than 2,000 violations a week (twice a week for every hourly employee). Opp'n at 14. Further, Plaintiff does not allege that 100% of former employees experienced those violations. At best Plaintiff indicates that Defendants had a pattern of behavior that effected some employees at varying frequency, which does not support Defendants'

---

[3] It is unclear to the Court how Defendants calculated the sum of $38,798,592. $14.00 [one hour of pay] x 2 days per workweek x 192 workweeks x 1,031 employees equals $5,542,656. Defendants appear to have multiplied this sum by 7 to reach their total, however, it is unclear to the Court why. Defendants do not include this unexplained multiplier in their rest break calculations.

5

assumption of a 100% violation rate. *Ibarra*, 775 F.3d at 1198-99 (stating "[w]e agree with the district court that a 'pattern and practice' of doing something does not necessarily mean *always* doing something"). Additionally, Defendants did not account for Plaintiff's allegation that "some, but not necessarily all" of the class members would be eligible to recover when calculating the amount based on all 1,031 employees. A violation rate of two missed meal breaks from all employees every work week is not reflective of Plaintiff's allegations of missing meals "at times" for "some, but not necessarily all" class members.

Defendants have similarly failed to explain their assumption of a 100% violation rate for Plaintiff's overtime claim. Defendants have not shown that it is more likely than not that every putative class member suffered at least one underlying overtime violation per week for every week of the statute of limitations period. *See* Opp'n at 14.

For Plaintiff's rest break claim calculation, Defendants assume a substantially more conservative violation rate of 10%. However, Defendants still do not share their reasoning for choosing that rate, or how that rate reflects Plaintiff's allegations that the rest break violations occurred "at times" for "some, but not necessarily all" class members. Without some explanation, it is not possible for the Court to evaluate the reasonableness of Defendants' assumptions regarding the amount in controversy for these claims.

Additionally, Defendants' calculations on Plaintiff's waiting time penalties and wage statement claims are unreasonable. These claims are derivative of Plaintiffs' other claims. For these calculations, Defendants again assumed a 100% violation rate for every former employee, despite Plaintiff's allegations that the violations occurred "at times" for "some of, but not necessarily all" of the class. Opp'n at 14-16; *see e.g.*, Compl. ¶¶ 60, 67. For their waiting time penalties calculation, Defendants also failed to explain the basis for their assumption of an eight-hour shift for every former employee. Defendants provided no evidence that all "625 hourly, non-exempt California employees who separated from employment from 2022 through March 23, 2025" were either full-time employees, or employees who always worked eight-hour shifts. Opp'n at 15.

Finally, Defendants provide no reasonable basis for their attorneys' fees calculation. When

6

assessing the amount in controversy requirement, courts consider the "future attorneys' fees recoverable by statute or contract." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). "[C]alculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.* at 796. Here, Defendants calculate attorneys' fees as equal to 25 percent of the amount in controversy on Plaintiff's substantive claims. As an initial matter, it is not reasonable to assume a benchmark 25 percent attorneys' fee in this case. "In reviewing CAFA amount-in-controversy disputes, the Ninth Circuit has expressly *declined* to adopt a *per se* rule that the attorneys' fees should be assumed to equal 25 percent of the estimated damages." *Banuelos v. Dominos Pizza LLC*, No. 5:24-CV-07085-BLF, 2025 WL 786350, at *9 (N.D. Cal. Mar. 12, 2025) (citing *Fritsch*, 899 F.3d at 794). Defendants appear to acknowledge this and focus instead on arguing that "[t]wenty-five percent of the amount is the 'benchmark' for reasonable attorneys' fees." Opp'n at 17. However, Defendants' calculation of attorneys' fees ignores the applicable statutory requirements that allow fee-shifting in the first place. *Fritsch*, 899 F.3d at 794. For example, while employees can recover attorneys' fees in civil actions for "the unpaid balance of . . . minimum wage or overtime compensation," Cal. Lab. Code § 1194(a), this section does not permit recovery of attorneys' fees "to employees who prevail on a section 226.7 action for the nonprovision of statutorily mandated rest periods." *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1254 (2012). It is therefore not a given that Plaintiff can recover any attorneys' fees on certain claims, let alone 25% on all claims. Moreover, as explained above, Defendants' underlying calculations are based on unreasonable assumptions; it is equally unreasonable to rely on those unsupported calculations as the foundation for the attorneys' fees estimate.

"Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Jauregui*, 28 F.4th at 996. "District courts in this circuit have thus declined to 'propose a reasonable violation rate . . . as the Court need only weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own.'" *Li v. Golftec Mgmt. LLC*, No. 24-CV-01678-RFL, 2024 WL 4553148, at

*2 (N.D. Cal. May 29, 2024).  Here, Defendants' assumptions about the amount in controversy for Plaintiff's claims are unreasonable on their face.  Thus, the Court rejects these assumptions and finds that Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

## IV. REQUEST FOR JUDICIAL NOTICE

Along with the motion to remand, Plaintiff asks the Court to take judicial notice of 26 state court cases and their contents.  Request for Judicial Notice, ECF No 18.  The Court declines to rule on Plaintiff's request, as the Court did not rely on the documents in resolving the present motion.

## V. CONCLUSION

Because Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, they have not satisfied their burden of establishing jurisdiction under CAFA.  Accordingly, the Court REMANDS this case to the Santa Clara County Superior Court.

**IT IS SO ORDERED.**

Dated: October 3, 2025

Noël Wise
United States District Judge